## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LENA T. KONAH, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 10-0904 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 27 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

The plaintiff in this matter brought suit against Unity Health Care, Inc., the District of Columbia and Robert Jefferson, an employee of the District of Columbia Department of Corrections. The plaintiff claims that the defendants violated the Fourth and Fifth Amendment, Title VII of the Civil Rights Act of 1964 and a number of state laws. Defendants Jefferson and the District of Columbia ("the defendants") now move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Because the plaintiff has adequately pleaded some, but not all, of her claims, the court grants in part and denies in part the defendants' motion.

## II. BACKGROUND

### A. Factual History

The plaintiff, Lena T. Konah, is a citizen of the United States who was born in Liberia.[1] Second Am. Compl. ¶ 4.  From November 2006 to September 2009, the plaintiff was employed by a private company, Unity Health Care, Inc. ("Unity Health Care").  *Id.* ¶ 5.  During this period, defendant Unity Health Care contracted with defendant District of Columbia ("the District") to provide medical treatment to inmates located in a penitentiary known as the Central Detention Facility.  *Id.*

As a part of her employment, the plaintiff was regularly tasked with providing medical services and medication to inmates at the Central Detention Facility.  *Id.* ¶ 12.  On or about August 5, 2009, the plaintiff was assigned to distribute medications to a group of inmates at the facility.  *Id.*  The inmates were located inside a secure area of the prison that is controlled by a "sally port," a point of entry or egress which can only be unlocked by a correctional officer.  *See id.* ¶¶ 13-21.  The sally port was operated by defendant Robert Jefferson, a correctional officer employed by the District's Department of Corrections.  *Id.* ¶ 8, 14.

Once the plaintiff entered the secured area, she noticed a group of inmates, dressed only in their undergarments, approaching her.  *Id.* ¶ 13.  Because the sally port was locked, the plaintiff could not leave.  *Id.*  The plaintiff alleges that she asked Officer Jefferson to open the sally port so that she could exit.  *Id.* ¶ 14.  Jefferson apparently refused.  *Id.*  The plaintiff alleges that the inmates surrounded her, jeering at her and using sexually explicit language.  *Id.* ¶ 17.

---

[1]   For the purposes of ruling on this motion, the court assumes that the plaintiff's allegations are true.  *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2000) (observing that "[w]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

The plaintiff further claims that one of the inmates grabbed her on the buttocks. *Id.* The plaintiff alleges that she continued to call for help and pleaded with Officer Jefferson to open the door. *Id.* ¶¶ 18-19. Eventually, an unnamed employee interceded on her behalf and convinced Officer Jefferson to open the sally port. *Id.* ¶¶ 20-21.

The plaintiff filed an incident report with Unity Health Care and informed her supervisor that she could not return to the same job site because of the incident. *Id.* ¶ 22. After the plaintiff filed her incident report, Unity Health Care terminated her employment. *Id.* ¶ 23.

## B. Procedural History

In June 2010, the plaintiff brought suit against Unity Health Care, the District of Columbia, and Robert Jefferson. *See generally* Compl. The plaintiff filed an amended complaint in July 2010 and defendants District of Columbia and Jefferson moved to dismiss the complaint soon thereafter. *See generally* Am. Compl.; Def.'s Mot. to Dismiss.

In March 2011, the plaintiff amended her complaint a second time. *See generally* 2d Am. Compl. The plaintiff alleges that the defendants violated her Fourth Amendment right to be free from unreasonable seizure, her Fifth Amendment right to due process and her Fifth Amendment right to be free from discrimination on the basis of gender and national origin. 2d Am. Compl. ¶¶ 40-45. The plaintiff also alleges that the defendants' discriminatory acts violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C. CODE §§ 2-2501 *et seq.* 2d Am Compl. ¶¶ 27-38. In addition, the plaintiff alleges that the defendants' acts constituted assault and battery, intentional infliction of emotional distress, reprisal and constructive discharge. 2d Am. Compl. ¶¶ 39, 46-51. Whereas defendant Unity Health Care filed an Answer, defendants District of Columbia and Jefferson instead moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See generally* Def.

Unity Health Care's Answer; Defs. District of Columbia & Jefferson's 2d Mot. to Dismiss ("Defs.' Mot."). With the defendants' motion now ripe for adjudication, the court turns to the parties' arguments and the relevant legal standards.[2]

## III. ANALYSIS

### A. Legal Standard for a Motion to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing

---

[2]    This Memorandum Opinion only discusses the plaintiff's claims against the moving parties, defendants Jefferson and the District of Columbia. The conclusions made herein do not affect the plaintiff's claims against defendant Unity Health Care.

courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief").  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242.  While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

## B. The Court Grants the Defendants' Motion to Dismiss the Plaintiff's Title VII and DCHRA Claims

### 1. The Plaintiff Does Has Not Adequately Pleaded that She Was Employed by the District of Columbia

The plaintiff claims that the District of Columbia violated Title VII and the DCHRA.  2d Am. Compl. ¶¶ 1, 3.  The defendants argue that these claims must be dismissed because the District of Columbia was never the plaintiff's employer.  Defs.' Mot. at 7-8.  The plaintiff

counters that the District of Columbia may be considered a joint employer under the law of this Circuit.  Pl.'s Opp'n at 5-6.

Title VII prohibits an employer from discriminating against its employees on the basis of race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-2.  Under Title VII, an individual may be employed by several joint employers.  *See, e.g.*, *Redd v. Summers*, 232 F.3d 933 (D.C. Cir. 2000); *Simms v. District of Columbia*, 587 F. Supp. 2d 269 (D.D.C. 2008).  Courts in this jurisdiction have used one of two legal tests to determine whether a plaintiff worked for joint employers.  *See Simms*, 587 F. Supp. at 273 (recognizing that it is currently unclear as to which of these two tests is controlling in this jurisdiction).  Under either of these two tests, the court is faced with a relatively open-ended, fact-intensive inquiry.  *Compare Redd*, 232 F.3d at 937-38 (applying a test put forth in *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982)), *with Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979) (applying a 12-part test).

In *Redd*, the Circuit indicated one test for joint employment: "whether one employer, while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."  232 F.3d at 938 (citing *Browning-Ferris*, 691 F.2d at 1123). In *Spirides*, the Circuit articulated an alternative legal test that focuses on several factors, including:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual worked; (5) the method of payment; (6) the manner in which the work relationship terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10)

whether the "employer" pays social security taxes; and (11) the intention of the parties.

613 F.2d at 831.

Here, the Second Amended Complaint states that the plaintiff is an employee of Unity Health Care. 2d Am. Compl. ¶¶ 5, 8. The Second Amended Complaint further states that as a part of her employment, the plaintiff worked at the Central Detention facility in the District of Columbia. *Id.* ¶ 5. The Second Amended Complaint does not allege, however, that she was employed by the District of Columbia. *Id.* Nor does the Second Amended Complaint put forth any facts that might allow the court to conclude that the District was an employer under *Spirides* or *Redd*. *See id.*

The plaintiff instead asks the court to allow discovery against the District, which might ultimately show that the District acted as a joint employer. 2d Am. Compl. ¶ 6 (stating that "employment status with the District of Columbia has to be ascertain [sic] through discovery"). The plaintiff is not entitled to discovery without first putting forth a factual basis for her claim, something she has not done. *NBC-USA Housing, Inc. v. Donovan*, 2011 WL 1299598, at *15 n.19 (D.D.C. Mar. 31, 2011) ("[T]here is no general right to discovery upon filing of the complaint. The very purpose of [Rule 12(b)(6)] is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003))).

The plaintiff attempts to overcome the defendants' motion to dismiss by including a number of additional factual allegations in her opposition. *See* Pl.'s Opp'n at 5. "It is axiomatic," however, that "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003); *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C.

2000).  Because a motion to dismiss requires courts to test the sufficiency of the factual

allegations contained within the four corners of the complaint, the court disregards any additional

factual allegations contained within the plaintiff's opposition to the defendants' motion.

*Juergens v. Urban Title Servs., Inc.*, 246 F.R.D. 4, 13 (D.D.C. 2007).  Consequently, the

plaintiff's Title VII claims are dismissed with regard to defendant District of Columbia.[3]

      The plaintiff's DCHRA claim suffers from the same deficiencies presented by her Title

VII claim.  The court notes that DCHRA claims are generally scrutinized under the same legal

framework used by courts to analyze claims under Title VII.  *Sparrow v. United Air Lines*, 216

F.3d 1111, 1114 (D.C. Cir. 2000); *Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 11

n.4 (D.D.C. 2008) (collecting cases).  The rare exception lies if there is an indication either from

legal precedent or statutory language that the DCHRA is meant to depart from federal courts'

Title VII jurisprudence.  *Evans v. Wash. Ctr. for Internships & Academic Seminars*, 587 F. Supp.

2d 148, 151 (D.D.C. 2008) (citing *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 890 (D.C.

2003)).  Because neither the text of the DCHRA nor case law indicates otherwise, the court

concludes that its Title VII joint-employer analysis similarly applies to the DCHRA's definition

of "employee."  Accordingly, the plaintiff has failed to allege that she was an employee of the

District, and the plaintiff's DCHRA claim against the District is therefore dismissed.

### 2.  The Plaintiff May Not Bring a Title VII Claim Against Defendant Jefferson in His Individual Capacity

---

[3]    The court is careful to note that it dismisses the plaintiff's claims without prejudice.  Dismissal with prejudice is only warranted when the court "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996), which has not occurred here.

The plaintiff alleges that defendant Jefferson violated Title VII.  2d Am. Compl. ¶ 28.

The defendants argue that defendant Jefferson may not be sued in his individual capacity.  Defs.'

Mot. at 7.  The plaintiff does not contest this matter.  *See* Pl.'s Opp'n at 5-8.

An individual may not be sued under Title VII.  *Gary v. Long*, 59 F.3d 1391, 1399 (D.C.

Cir. 1995).  Rather, an individual employee may only be sued in his capacity as the agent of an

employer.  *Id.*  Because the plaintiff has not alleged any plausible entitlement to relief against the

District under Title VII, *see supra* Part III.B.1, *a fortiori* the plaintiff's claim against Jefferson

must similarly fail.  *See* 59 F.3d at 1399.  Accordingly, the court dismisses the plaintiff's Title

VII claims against defendant Jefferson.

### C.  The Court Grants in Part and Denies in Part the Defendants' Motion to Dismiss the Plaintiff's Constitutional Claims

#### 1.  The Plaintiff Has Adequately Pleaded Her Fourth Amendment Claim Against Defendant Jefferson

The plaintiff claims that defendant Jefferson's failure to open the sally port was an

"unreasonable seizure of her person" in violation of the Fourth Amendment.  2d Am. Compl. ¶

43.  The defendants argue that defendant Jefferson's failure to promptly open the sally port was

not an unconstitutional seizure because the plaintiff willingly entered the facility.  Defs.' Mot. at

11.  The plaintiff counters that she was detained against her will once defendant Jefferson

refused to open the sally port.  *See* Pl.'s Opp'n at 9.

"[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination

of freedom of movement through means intentionally applied."  *Scott v. Harris*, 550 U.S. 372,

381 (2007) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989)).  The plaintiff

alleges that defendant Jefferson, a state actor, "refused to open the door," preventing her exit.  2d

Am. Compl. ¶ 14.  These facts, if assumed to be true, establish that defendant Jefferson

intentionally refused to open the door, thereby terminating the plaintiff's freedom of movement.

The defendants' argument – that the plaintiff consented to enter the correctional facility – must

be rejected at this stage of the litigation.  It is evident from the face of the Second Amended

Complaint that the plaintiff had withdrawn any consent to remain in the secure area by

repeatedly asking defendant Jefferson to open the sally port so that she could be released.  *See* 2d

Am. Compl. ¶¶ 13-21.  Because these facts are assumed to be true when ruling on a motion to

dismiss, the plaintiff's version of the events must be credited.  Accordingly, the court denies the

defendants' motion to dismiss this claim.

### 2.  The Plaintiff Has Adequately Pleaded Her Claim of Discrimination on the Basis of Gender Against Defendant Jefferson

The Second Amended Complaint states that the defendants discriminated against the

plaintiff on the basis of her gender, depriving her of equal protection of the law.  2d Am. Compl.

¶ 43.  The defendants contend that the plaintiff fails to allege sufficient proof of discriminatory

intent or purpose.  Defs.' Mot. at 12.  The plaintiff counters that her allegations of sexual abuse

and harassment are more than enough to articulate an equal protection claim.  *See* Pl.'s Opp'n at

7.

The Fourteenth Amendment's Equal Protection Clause requires state actors to treat

similarly situated persons alike.[4]  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432,

439 (1985).  Differential treatment on the basis of sex may violate the Equal Protection Clause.

*See Williams v. District of Columbia*, 916 F. Supp. 1, 6-7 (D.D.C. 1996).  The plaintiff alleges

that the defendants "failed to remedy sexually offensive conduct by inmates," which included

---

[4]        The District of Columbia is subject to this requirement by virtue of the Fifth Amendment's guarantee of due process of law.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *Family Div. Trial Lawyers of the Superior Court-D.C., Inc. v. Moultrie*, 725 F.2d 695, 697 n.1 (D.C. Cir. 1984).

"gender specific abusive language" and "sexual assaults." *Id.* ¶ 30. These facts, if proven true, would support the plaintiff's allegation that she was treated differently and unfairly on account of her gender. *See Williams*, 916 F. Supp. at 6-7 (D.D.C. 1996) (concluding that allegations of sexual harassment support an equal protection claim). Due to the generous inferences that must be drawn in the plaintiff's favor at this stage in the litigation, the court concludes that these alleged assaults and epithets are sufficient to make out a discrimination claim. *See Holy Land Found.*, 333 F.3d at 165 (instructing courts to draw all reasonable inferences in the plaintiff's favor). Although the plaintiff has not yet proven that the defendant acted with discriminatory animus, it is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint. *Swierkiewicz*, 534 U.S. at 511-14. Accordingly, the court concludes that the plaintiff has pleaded sufficient facts to support her claims of sexual discrimination.

### 3. The Plaintiff Has Not Adequately Pleaded Her Claim of Discrimination on the Basis of National Origin Against Defendant Jefferson

The plaintiff alleges that the defendants discriminated against her on the basis of her national origin. 2d Am. Compl. ¶¶ 35-38. The defendants contend that the plaintiff's claims of discrimination on the basis of national origin remain unsupported by facts pleaded in her Second Amended Complaint. Defs.' Mot. at 12. The plaintiff does not address this issue in her opposition. *See* Pl.'s Opp'n at 9-10.

Discrimination on the basis of race or national origin is barred by the Fifth and Fourteenth Amendments. *Loving v. Virginia*, 388 U.S. 1, 11 (1967); *Bolling v. Sharpe*, 347 U.S. 497 (1954); *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886). The plaintiff summarily alleges that "she was treated differently than similarly situated persons of non-Liberian origin." Compl. ¶ 36. The Second Amended Complaint, however, is completely bereft of any facts that might

support the plaintiff's claim.[5]  No factual allegations address the treatment of employees of

Liberian origin.  *See generally id.*  Discrimination on the basis of national origin is a serious

allegation that, if proven true, is without doubt unconstitutional.  However, the plaintiff's Second

Amended Complaint is devoid of the slightest factual predicate to support such a claim.  The

plaintiff's claim of discrimination on the basis of national origin is therefore dismissed.

### 4.  The Plaintiff Has Adequately Pleaded her Due Process Claim Against Defendant Jefferson

The plaintiff claims that defendant Jefferson's failure to open the sally port was an

"unreasonable seizure of her person" that deprived the plaintiff of her liberty without due process

of law.  2d Am. Compl. ¶ 43.  The defendants claim that the plaintiff's due process claim is

legally insufficient because the Due Process Clause does not require a municipality to provide its

employees with a safe working environment.  Defs.' Mot at 11.  Although the plaintiff does not

directly address this claim, she nevertheless maintains that her Second Amended Complaint

contains sufficient factual material to sustain her due process claim.  Pl.'s Opp'n at 9.

The Due Process Clause of the Fifth Amendment prohibits the United States from

depriving a person "of life, liberty, or property, without due process of law." U.S. CONST. amend.

V.  Freedom from imprisonment and from government custody lies at the heart of the liberty

interest the due process clause protects.  *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  It is

thus "beyond cavil" that freedom from bodily restraint prevents "confinement in a prison, a

mental hospital, or some other form of custodial institution."  *Reno v. Flores*, 507 U.S. 292, 315-

16 (1993).

---

[5]     The plaintiff alleges that employees who are not of Liberian origin were "treated more favorably
by way of transfer requests and job reassignments."  Compl. ¶ 37.  These allegations, however,
are not levied against defendant Jefferson.

The Due Process Clause does not impose an independent duty on municipalities to provide a minimum level of safety and security to its employees. *Collins*, 503 U.S. at 130. Nevertheless, the *deliberate* decision of individual government officials to deprive a person of liberty may run afoul of the Due Process Clause. *Id.* at 127 n.10. The plaintiff here charges defendant Jefferson with deliberately refusing to open the sally port, thus preventing her exit and depriving her of her liberty.[6] 2d Am. Compl. ¶ 14. These factual allegations provide a sufficient factual basis for her constitutional claim with respect to defendant Jefferson, and the court therefore denies the defendants' motion to dismiss this claim.

### 5. The Plaintiff Has Not Adequately Pleaded Her Claims Against the District of Columbia

The plaintiff alleges that the District of Columbia should be held liable for Defendant Jefferson's unconstitutional acts. 2d Am. Compl. ¶¶ 42-44. The defendants argue that the District cannot be held liable for constitutional violations under 42 U.S.C. § 1983 because the plaintiff does not sufficiently allege that her constitutional injuries were the result of any municipal "policy or custom." Defs.' Mot. at 9. The defendants argue that the Second Amended Complaint only includes "conclusory and speculative statements" that are insufficient to withstand a motion to dismiss. *Id.* The plaintiff counters that a pattern of "offensive and degrading conduct towards females" existed at the facility, thus giving rise to municipal liability. Pl.'s Opp'n at 7-8.

---

[6]     In *Simms v. District of Columbia*, 699 F. Supp. 2d 217 (D.D.C. 2010), a member of this court held that the exact factual allegations alleged here – purposefully using a sally port to delay an employee's release from a room where the inmates were located – did not establish a due process claim against a municipality. *Id.* at 224 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 130 (1992)). *Simms* does not appear to address the question of whether an individual corrections officer may be held personally liable for deliberately detaining a person against her will. *Id.* Rather, the court in *Simms* only discussed claims against the municipal defendants. *See generally id. Simms* is thus inapposite to the plaintiff's claim against defendant Jefferson.

To determine municipal liability under 42 U.S.C. § 1983, the court must conduct a two-step inquiry. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). First, the court must determine whether the plaintiff establishes a predicate constitutional violation. *Id.* If so, the court is then required to determine whether the complaint states a claim that a custom or policy of the municipality caused the violation. *Id.*; *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). The second prong requires a determination of whether "a policy or custom of the District of Columbia caused the constitutional violation alleged under the first prong." *Baker*, 326 F.3d at 1306; *Monell*, 436 U.S. at 694. As the court in *Baker* stated, the plaintiff must

> allege[] an "affirmative link," such that a municipal policy was the "moving force" behind the constitutional violation. There are a number of ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983: the explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom"; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations.

*Baker*, 326 F.3d at 1306-07 (internal citations omitted). Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* "absent proof that the activity was caused by a municipal policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality); *see also Byrd v. District of Columbia*, 297 F. Supp. 2d 136, 139 (D.D.C. 2003). Therefore, a plaintiff cannot prevail simply by showing that a single officer was inadequately trained. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91 (1989).

Here, the plaintiff has satisfied the first step by successfully alleging several predicate constitutional violations. *See supra* Parts III.C.1-4. The plaintiff's allegations against the municipality, however, are scant at best. The Second Amended Complaint does not articulate

any specific factual allegations describing any putative inadequacies in the training of correctional officers.  *See generally* 2d Am. Compl.  In addition, the Second Amended Complaint does not put forth facts to support the plaintiff's contention that sexual misconduct is widespread, or that the District had failed to supervise or discipline its employees.  *See generally id.*  Finally, the plaintiff does not put forth facts to show that defendant Jefferson's acts were the practical result of any municipal policy.  *See generally id.*  Instead, the complaint simply recites the legal elements of a claim for municipal liability.  For example, the plaintiff claims that the defendants "failed to remedy sexually offensive conduct" which was "ongoing at the Central Detention Facility."  *Id.* ¶ 30.  In addition, the plaintiff alleges that the "customs and practices" of "encouraging sexual misconduct by failing to adequate[ly] supervise[,] discipline or train its employees or agents," enabled its employees to act with "deliberate indifference" to the constitutional rights of the plaintiff.  *Id.* at ¶¶ 42-43.  The plaintiff alleges further that "sexual harassment of female staff was ongoing and continuous at the Central Detention Facility."  *Id.*

It is true that some of these allegations are factual in nature.  It is nonetheless true that these allegations merely recite the legal elements of a *prima facie* claim for municipal liability.  The court is not obliged to accept legal conclusions couched as factual allegations.  *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555)).  The paucity of specific factual allegations here allows the court to conclude that the plaintiff has merely put forth "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," all of which "do not suffice" to state a plausible claim to relief.  *Iqbal*, 129 S. Ct. at 1949; *see also Creecy v. District of Columbia*, 2011 WL 1195780, at *9 (D.D.C. Mar. 31, 2011) (holding that *Iqbal* requires dismissal of unsubstantiated claims that an individual's unconstitutional conduct gave rise to municipal liability); *Trimble v. District of Columbia*, 2011 WL 1557886, at *2-3

(D.D.C. Apr. 26, 2011) (same); *Harris v. District of Columbia*, 696 F. Supp. 2d 123, 129

(D.D.C. 2010) (same).  Accordingly, the plaintiff's claims against the District of Columbia are

dismissed.

This court is careful to note that the plaintiff's claims are dismissed without prejudice.

Determining whether a complaint states a plausible claim for relief is a "context-specific task"

that requires the reviewing court to draw upon its "judicial experience and common sense."

*Iqbal*, 129 S. Ct. at 1950.  Judicial experience warns that the District of Columbia has repeatedly

been held liable for failing to prevent the unconstitutional acts of its correctional officers.  These

cases reveal a sordid history of appalling behavior, including frequent sexual abuse, *Daskalea v.*

*District of Columbia*, 227 F.3d 433, 437 (D.C. Cir. 2000), the forcing of female inmates to

perform in "sex shows," *Newby v. District of Columbia*, 59 F. Supp. 2d 35 (D.D.C. 1999), sexual

harassment against employees, *Neal v. Director, D.C. Dep't of Corr.*, 1996 U.S. Dist. LEXIS

7967 (D.D.C. May 30, 1996), and other depraved acts, *Women Prisoners of the D.C. Dep't of*

*Corr. v. District of Columbia*, 877 F. Supp. 634 (D.D.C. 1994) (finding that prison employees

regularly sexually abused female prisoners, that the District of Columbia's responses to the

complaints of female inmates were inadequate and that the District of Columbia did not

adequately investigate complaints of sexual misconduct).  Indeed, at least one other member of

this court has heard a lawsuit involving the precise conduct alleged here, indicating that a pattern

of abusive conduct may exist:

> [The] plaintiff alleges that [Correctional Officer] Masi retaliated against plaintiff
> in 2004-05 by waiting in opening the door for plaintiff in order to delay her exit
> from housing units which subjected her to standing in the presence of inmates
> longer than necessary.  [The] Plaintiff asserts that this jeopardized her safety and
> that complaints about these actions were ignored or resolved in an inadequate
> manner.

*Simms*, 587 F. Supp. 2d at 272 (citations omitted).  Nevertheless, here the plaintiff's claim is propped up by nothing more than a smattering of conclusory legal allegations that remain unsubstantiated by specific factual allegations.  The court is therefore obligated to dismiss the plaintiff's claims against the District of Columbia.

### 6.  The Court Concludes that Defendant Jefferson Is Not Entitled to Qualified Immunity at This Stage of the Litigation

#### a.  Legal Standard for Qualified Immunity

42 U.S.C. § 1983 provides a cause of action against any person who, acting under the color of state law, abridges rights that are guaranteed by the Constitution or the laws of the United States.  *Polk v. District of Columbia*, 121 F. Supp. 2d 56, 61 (D.D.C. 2000); *Abramson v. Bennett*, 707 F. Supp. 13, 16 (D.D.C. 1989).  State officials may, however, be entitled to qualified immunity.  *See Wilson v. Layne*, 526 U.S. 603, 609 (1999).  Qualified immunity protects government officials "from liability for civil damages insofar as [the official's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It provides "an immunity from suit rather than a mere defense to liability."  *Id.* at 815 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In *Saucier v. Katz*, the Supreme Court established a two-pronged analysis for courts to undertake when reviewing a qualified immunity defense.  533 U.S. 194 (2001).  The first prong requires the court to consider whether the plaintiff has alleged the deprivation of an actual constitutional right.  *Id.* at 201.  In defining an "actual constitutional right," a court must be careful to avoid defining the right in overly general terms "lest [it] strip the qualified immunity defense of all meaning."  *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001).

Instead, the court must identify the right with the appropriate level of specificity so as to allow officials to reasonably anticipate when their conduct may give rise to liability for damages. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

The second prong requires the court to decide whether the constitutional right was clearly established at the time of the defendant's alleged misconduct. *Id.* A right is "clearly established" if its "contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Wilson*, 526 U.S. at 614-15); *see also Crawford-El v. Britton*, 523 U.S. 574, 591 (1998) (stating that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct"). Although the specific action in question need not have been held unlawful by the courts, its unlawfulness in light of pre-existing law must have been apparent to the defendant. *Butera*, 235 F.3d at 646 (quoting *Anderson*, 483 U.S. at 640). Whether the rights are clearly established is a pure question of law to be resolved by the court. *Pitt v. District of Columbia*, 491 F.3d 494, 509 (D.C. Cir. 2007).

The Supreme Court in *Saucier* mandated that courts first consider whether the plaintiff has alleged the deprivation of an actual constitutional right, and to second consider whether the constitutional right was clearly established at the time of the defendant's conduct. 553 U.S. 194, 201 (2001). In *Pearson v. Callahan*, however, the Supreme Court reconsidered the compulsory nature of the *Saucier* framework and held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." 129 S. Ct. at 818. The Court reasoned that "judges . . . are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case," and concluded that courts may use their discretion to determine which of the two prongs to evaluate first in light of the

circumstances of the particular case at hand.  *Id.* at 821.

### b.  The Plaintiff Has Adequately Alleged that Defendant Jefferson Violated Her Clearly Established Constitutional Rights

The defendants allege that defendant Jefferson is protected by qualified immunity. Defs.' Mot. at 14.  The plaintiff counters that defendant Jefferson is not immune to suit because it was clear that defendant Jefferson "knew and understood that his actions were unreasonable." Pl.'s Opp'n at 13.

Assuming the plaintiff's allegations to be true, the plaintiff has satisfied the first prong by sufficiently alleging that her detention violated the Fourth Amendment and the Fifth Amendment.  *See supra* Parts III.C.1-4.  The court thus turns to the second inquiry: whether the constitutional right alleged was "clearly established" such that a "reasonable official would understand that what he is doing violates that right."  *Butera*, 235 F.3d at 646.

It is clearly established that the Fourth Amendment prohibits the detention of individuals without any cause.  *Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006).  Similarly, it is clearly established that a correctional officer's discrimination on the basis of sex violates the Fifth Amendment.  *Williams v. District of Columbia*, 916 F. Supp. 1, 6-7 (D.D.C. 1996) (holding that allegations of sexually harassing conduct are cognizable under the Fifth Amendment).  Finally, it is clearly established that the government may not deprive an individual of her liberty by detaining her without due process.  *Reno v. Flores*, 507 U.S. at 315-16.  Because the plaintiff has alleged that defendant Jefferson deprived her of her clearly established constitutional rights, the court cannot conclude at this stage of the litigation that defendant Jefferson is entitled to qualified immunity from suit.  Accordingly, the defendants' motion to dismiss the plaintiff's § 1983 claims against defendant Jefferson on the basis of qualified immunity is denied.

**D.  The Court Grants in Part and Denies in Part the Defendants' Motion to Dismiss the Plaintiff's Common Law Claims**

**1.  The Court Asserts Supplemental Jurisdiction over the Plaintiff's Common Law Claims**

The defendants argue that this court should choose not to assert supplemental jurisdiction over the plaintiff's state law claims, especially if it dismisses the plaintiff's federal claims. Defs.' Mot. at 19-20.  The plaintiff counters that this court should exercise supplemental jurisdiction over the plaintiff's common-law claims because both her federal and state claims "derive from a common nucleus of operative fact."  Pl.'s Opp'n at 12-13.

"When a federal court has an independent basis for exercising federal jurisdiction, it may, in certain circumstances, also exercise supplemental jurisdiction over related claims under state law."  *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996).  To determine when the assertion of supplemental jurisdiction is appropriate, the district court should apply a two-part test.  *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).  The court must first determine whether the state and federal claims derive from a common nucleus of operative fact.  *Id.*  If so, "the court has the power, under Article III of the Constitution, to hear the state claim."  *Id.*  The court then must decide whether to exercise its discretion to assert jurisdiction over the state claim.  *Id.* (noting the Supreme Court's observation that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right").  In deciding whether to assert supplemental jurisdiction over a state claim, the court should consider whether judicial economy, convenience and fairness to litigants weigh in favor of doing so.  *Id.*  A court may decline to exercise supplemental jurisdiction, however, if the state claim raises a novel or complex issue of state law, substantially predominates over the federal claims or remains after the court has dismissed the federal claims.  *Id.* at 921 (citing the supplemental jurisdiction statute, 28 U.S.C. § 1367(c)).

Here, all of the plaintiff's claims stem from one incident: defendant Jefferson's alleged refusal to open the sally port, thereby locking the plaintiff in an area of the penitentiary against her will.  *See* Compl. ¶¶ 43, 47.  The plaintiff alleges that this event gives rise to liability for a number of state-law claims, including reprisal, retaliatory discharge, assault, battery and intentional infliction of emotional distress.  *See id.* ¶¶ 39, 46-51.  The court therefore concludes that the plaintiff's state and federal claims arise from one "common nucleus of operative fact." As such, the plaintiff's common law claims are part of the same "case or controversy" under Article III.  *See* 28 U.S.C. § 1367(a); *see generally Anderson-Bey v. District of Columbia*, 466 F. Supp. 2d 51, 68 (D.D.C. 2006) (hearing inmate's common law claims of assault, battery and intentional infliction of emotional distress in addition to constitutional claims against corrections officer).  Because the facts underlying the plaintiff's federal and state claims substantially overlap, the court also concludes that judicial economy, convenience and fairness weigh in favor of hearing both the state and federal claims in one proceeding.  Finally, the court holds that the plaintiff's common law claims of assault, battery and intentional infliction of emotional distress are not novel or complex issues of state law that lie beyond the ken of this court.  *See Anderson-Bey*, 466 F. Supp. 2d at 68.  Hence, the court elects to retain its supplemental jurisdiction over the plaintiff's common law claims.

### 2.  The Court Grants the Defendants' Motion to Dismiss the Plaintiff's Constructive Discharge Claim Against Defendant Jefferson

The plaintiff alleges that she was constructively discharged after complaining about her treatment at the correctional facility.  2d Am. Compl. ¶¶ 50-51.  The defendants argue that the court should dismiss the plaintiff's constructive discharge claim because the plaintiff was never an employee of the District.  Defs.' Mot. at 18-19.  The plaintiff counters that the defendants

were "aware and on notice" of the abusive environment at the facility and should therefore be held liable for constructive discharge.  Pl.'s Opp'n at 12.

In order to establish a claim of constructive discharge, the plaintiff must demonstrate that "(1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the [plaintiff's] conclusion that [she] had no option but to end [her] employment."  *Bryant v. Pepco*, 730 F. Supp. 2d 25, 32 (D.D.C. 2010) (citing *Villines v. United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 999 F. Supp. 97, 104-05 (D.D.C. 1998)).  Here, the plaintiff does not sufficiently allege that she was employed by the District of Columbia.  *See supra* Parts III.B.1-2.  Moreover, the plaintiff does not allege that she was subjected to conditions that were so intolerable that she was forced to quit; rather, she alleges that she was fired.  2d Am. Compl. ¶ 23.  The plaintiff's allegations therefore do not give rise to a claim of constructive discharge.  Accordingly, the court grants the defendants' motion to dismiss this claim.

### 3.  The Plaintiff Has Adequately Pleaded Her Claims of Assault and Battery

The defendants argue that the plaintiff's assault and battery claims should be dismissed because defendant Jefferson did not personally touch the plaintiff.  Defs.' Mot. at 15-16.  The plaintiff maintains that defendant Jefferson caused the offensive contact by refusing to unlock the door, ultimately causing unwanted contact at the hands of the inmates.  Pl.'s Opp'n at 11.

Under D.C. law, an assault is "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim."  *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007).  Physical contact is not an element of a *prima facie* claim of assault. *See id.*; RESTATEMENT (SECOND) OF TORTS § 21 cmt. b ("In order that the actor shall be liable under the rule stated in this Section, it is . . . not necessary that it should directly or indirectly

cause any tangible and material harm to the other."). Whether or not defendant Jefferson laid a finger on the defendant is not the dispositive inquiry. *See United States v. Benn*, 476 F.2d 1127, 1134 n.26 (D.C. Cir. 1973) ("There may, of course, be an assault without physical contact . . . ."). Rather, the appropriate question is whether defendant Jefferson committed an intentional act that threatened to subject the plaintiff to physical harm. The plaintiff's allegation – that defendant Jefferson intentionally confined her in a space where she was at risk of physical harm – fits comfortably within the definition of assault. The court therefore denies the defendant's motion to dismiss the plaintiff's assault claim.

Battery is defined as an "intentional act that causes a harmful or offensive bodily contact." *Evans-Reid*, 930 A.2d at 937 (citing RESTATEMENT (SECOND) OF TORTS § 18). It is elementary that an individual need not touch a victim to be liable for battery. RESTATEMENT (SECOND) OF TORTS § 18 cmt. b (noting that "it is not necessary that [a defendant] should bring any part of his own body in contact with another's person" to be liable for battery). Rather, the defendant may be liable for any offensive conduct that directly or indirectly results from the defendant's acts. *Id.* Here, the plaintiff alleges that defendant Jefferson intentionally prevented the plaintiff from escaping the grasp of several inmates, who then surrounded her, called her names, used sexually explicit language and grabbed her on the buttocks. Compl. ¶¶ 12-21, 47. These facts are sufficient to establish a prima facie claim for battery. *See Anderson-Bey*, 466 F. Supp. 2d at 68 (concluding that physical restraint of inmate's movement could constitute a battery). The court therefore denies the defendants' motion to dismiss the plaintiff's battery claim.

**4.  The Plaintiff Has Adequately Pleaded Her Claim of Intentional Infliction of Emotional Distress**

The defendant argues that the plaintiff's claim of intentional infliction of emotional distress should be dismissed because the defendant did not commit any acts that were sufficiently outrageous to give rise to the tort.  Defs.' Mot. at 16-17.  The plaintiff counters that defendant Jefferson's decision to stand by as "known criminals clothed only in their undergarments" surrounded the plaintiff was far beyond any reasonable bounds of decency.  Pl.'s Opp'n at 12.

To establish a *prima facie* case of intentional infliction of emotional distress under D.C. law, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress. *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 255 (D.C. Cir. 2008).  "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002).

The plaintiff has alleged that defendant Jefferson refused to open the sally port which would have allowed her to escape from the approaching group of inmates.  Compl. ¶¶ 12-21, 49. Depending on the veracity and severity of these claims, the plaintiff may very well prove that defendant Jefferson's actions were so extreme and outrageous that they caused severe emotional distress.  *See David v. District of Columbia*, 436 F. Supp. 2d 83, 86 (D.D.C. 2006) (holding that unwanted physical contact could provide a basis for a valid claim of intentional infliction of emotional distress).  The facts pleaded therefore support a plausible claim to relief. Consequently, the court denies the defendants' motion to dismiss this claim.

## IV.  CONCLUSION

For the foregoing reasons, the court dismisses the plaintiff's Title VII and DCHRA claims against defendants District of Columbia and Robert Jefferson.  With regard to the plaintiff's § 1983 claims against defendant Jefferson, the court dismisses only the plaintiff's claim of discrimination on the basis of national origin.  The plaintiff's § 1983 claims against the District, however, are dismissed in their entirety.  The court also chooses to exercise supplemental jurisdiction over the plaintiff's state law claims and concludes that the plaintiff's claim of constructive discharge must be dismissed.[7]  With regard to the plaintiff's remaining claims, the defendants' motion is denied.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 14th day of September, 2011.


RICARDO M. URBINA
United States District Judge

---

[7]        Those claims which have been dismissed are dismissed without prejudice.